## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

JENNIFER PORTER, on behalf of herself
and all others similarly situated,

 Plaintiff,

 v.                                                3:17-cv-08043 (FLW)(TJB)

MERILL LYNCH PIERCE FENNER &
SMITH, INC.,

 Defendant.

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS

---

PECHMAN LAW GROUP PLLC          LAW OFFICES OF MITCHELL SCHLEY, LLC

Louis Pechman, Esq.             Mitchell Schley, Esq.
Gianfranco J. Cuadra, Esq.      197 Route 18, Suite 3000
488 Madison Avenue - 17th Floor East Brunswick, NJ 08816
New York, New York 10022        Tel.:  (732) 325–0318
Tel.:  (212) 583–9500

*Attorneys for Plaintiff Jennifer Porter, the Putative*
*Rule 23 Class, and the Putative FLSA Collective*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii-v

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .................................... 2

I.    Factual and Procedural History and Settlement Discussions ....................... 2

II.   Proposed Settlement Terms ........................................................................... 4

ARGUMENT ............................................................................................................ 5

I.    Preliminary Approval of the Settlement Is Appropriate ............................... 5

II.   The Class Satisfies Rule 23 (a) and Rule 23(b)(3) ........................................ 7

      A.    The Requirements of Rule 23 (a) Are Met ......................................... 7

      B.    The Requirements of Rule 23 (b) Are Met ........................................ 10

III.  The FLSA Collective Action Should Be Certified ........................................ 12

IV.  The Proposed Settlement Is Fair, Adequate, and Reasonable ...................... 13

      A.    The Court Should Presume that the Settlement Is Fair ..................... 15

      B.    The *Girsh* Factors Tip in Favor of Preliminary Approval ............... 16

            1.    Complexity, Expense, and Duration of Litigation ................... 16

            2.    Reaction of the Class to the Settlement ................................... 17

            3.    Stage of Proceedings and Amount of Discovery Completed ... 17

            4.    Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial ............................... 17

            5.    Reasonableness of Recovery in Settlement ............................. 18

      C.    The Proposed Settlement Is Fair and Reasonable under the FLSA ................. 20

V.   The Proposed Notice Materials and Notice Issuance Plan Are Adequate ............... 21

VI.  The Court Should Appoint the Claims Administrator and Order It to Distribute the Notice Materials to the Class Members ................................ 23

VII. Plaintiff's Counsel Should Be Appointed Class Counsel ........................... 23

VIII. Class Representatives' Proposed Service Awards Are Reasonable............................ 24

IX.   The Court Should Preliminarily Approve Class Counsel's Request for Fees and Costs ...................................................................................................................25

X.    A Final Settlement Approval Hearing Should Be Scheduled...................................... 26

CONCLUSION ................................................................................................................. 27

# TABLE OF AUTHORITIES

## CASES

*Acevedo v. BrightView Landscapes, LLC*, No. 13 Civ. 2529,
　2017 WL 1062377, at *1 (M.D. Pa. Mar. 21, 2017) ......................................6, 13

*Amchem Productions., Inc. v. Windsor*, 521 U.S. 591 (1997)........................... 7, 10, 11

*Austin v. Pa. Department of Corrections*, 876 F. Supp. 1437 (E.D. Pa. 1995)........................ 16

*Bonett v. Eduation Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267,
　at *1 (E.D. Pa. May 9, 2003).................................................................................17

*Bredbenner v. Liberty Travel, Inc.*, No. Civ. 09-905, 09-1248, 09-4587 (MF),
　2011 WL 1344745, at *1 (D.N.J. Apr. 8, 2011) ..........................................passim

*Brown v. Progressions Behavioral Health Services, Inc.*, No. 16–cv–6054,
　2017 WL 2986300, at *1 (E.D. Pa. July 13, 2017) ......................................25, 26

*Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461,
　2012 WL 1019337, at *1 (D.N.J. Mar. 26, 2012 ....................................................26

*Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1  (D.N.J. 1979)................................ 16

*Cedant Corp. Litigation*, 264 F.3d 201 (3d Cir. 2001)................................................. 14, 15, 17

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)...................................... 13

*Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *1
　(M.D. Pa. Jan. 7, 2013) ...........................................................................................8

*Davis v. Essex County.*, No. 14-cv-l122 (CCC-JBC), No. 14-CV-1122 (CCC-
　JBC), 2015 WL 7761062, at *1 (D.N.J. Dec. 1, 2015)........................................13

*DeMaria v. Horizon Healthcare Services, Inc.*, No. 11-7298 (WJM),
　2015 WL 3460997, at *1 (D.N.J. June 1, 2015) ..................................................10

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ........................................ 5

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). ................................................. 21

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985) ................................................. 8, 10

*Fein v. Ditech Financial., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *1
　(E.D. Penn. Sept. 27, 2017) .................................................................................13

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)........................................................... 6, 14

*Hall v. Best Buy Co.*, 274 F.R.D. 154 (E.D. Pa. 2011)................................................. 12

*Halley v. Honeywell Internationl, Inc.*, 861 F.3d 481 (3d Cir. 2017) .......................................... 6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................................ 6

*In re Amtrak Train Derailment in Philadelphia, Pa.*, No. 15-MD-2654,
2016 WL 1359725, at *1 (E.D. Pa. Apr. 6, 2016) .....................................................................7

*In re Community Bank of North VA.*, 418 F.3d 277 (3d Cir. 2005) ...................................... 8, 9

*In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ................................................ 14, 18, 26

*In re Janney Montgomery Scott LLC Fiancial Consultant Litigation*,
No. 06–3202, 2009 WL 2137224, at *1 (E.D. Pa. July 16, 2009)......................................11

*In re Prudential Insurace Company America Sale Practice Litigation Agent Actions*,
148 F.3d 283 (3d Cir. 1998).......................................................................................6, 7, 11

*In re Remeron End-Payor Antitrust Litigation*, No. 02-Civ-
2007, 2005 WL 2230314, at *1 (D.N.J. Sept. 13, 2005)....................................................10

*In re Traffic Executive Association*, 627 F.2d 631 (2d Cir. 1980) ........................................... 7

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004)........................... 6, 14

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) ................................................ 16

*Lazy Oil, Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999) ........................................................ 14

*Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997) ........................................ 14

*Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045,
2006 WL 2085282, at *1 (D.N.J. 2006) ................................................................................19

*Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988) .................................................................... 12

*Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987)................................................... 12

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)........................ 13, 20

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1
(D.N.J. Mar. 14, 2012) .........................................................................................................20

*MR. v. E. Brunswick Board of Education*, 109 F.3d 896 (3d Cir. 1997 ..................................... 21

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) .......................................................... 17

*Rodriguez v. National City Bank*, 726 F.3d 372 (3d Cir. 2013).................................................. 8

*Singleton v. First Student Management. LLC*, No. 13 Civ.
1744, 2014 WL 3865853, at *1 (D.N.J. Aug. 6, 2014)................................................passim

*Smith v. Professional Billing & Management Services, Inc.*, No. 06-
4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007)..............................14

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273 (3d Cir. 2011) ........................ 7, 8, 10

*Varacallo v. Massachusetts Mutual Life Insurance. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ....... 11, 19

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)........................................... 7, 8

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)....................... 5

*Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW),
2015 WL 333465, at *1 (D.N.J. Jan. 23, 2015)..................................................14

*Zimmerman v. Zwicker & Associates., P.C.*, No. 09-CV-
3905, 2011 WL 65912, at *1 (D.N.J. Jan. 10, 2011)...........................................6

## RULES/STATUTES

28 U.S.C. § 1715 ................................................................................................ 27

29 U.S.C. § 201 ................................................................................................... 1

29 U.S.C. § 216 ................................................................................................. 22

Fed. R. Civ. P. 23..........................................................................................passim

New Jersey Wage And Hour Law .................................................................. 1, 2

New Jersey Wage Payment Law.................................................................... 1, 2

## PRELIMINARY STATEMENT

By this unopposed Motion, Plaintiff Jennifer Porter ("Plaintiff")[1] respectfully seeks: (a) preliminary certification of a Rule 23 class for settlement purposes only; (b) preliminary certification of a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for settlement purposes only; (c) preliminary approval of the Parties' Settlement, as embodied in the Stipulation (Ex. 1), as fair and reasonable; (d) appointment of Plaintiff and Opt-In Plaintiff Christine Rojas as Class Representatives; (e) appointment of Plaintiff's attorneys as Class Counsel; (f) approval of the Parties' proposed Settlement Notice; (g) appointment of Rust Consulting, Inc. as Claims Administrator and an order directing it to distribute the Settlement Notice to the Class Members; and (h) the setting of a Final Settlement Approval Hearing.  If approved by this Court, the Settlement would resolve bona fide disputes on a class-wide basis.

As set forth in the Complaint (ECF No. 1), Porter brought her claims as purported class and collective actions on behalf of herself and all exempt-classified Supervision Analysts ("SAs") or Senior Supervision Analysts ("SSAs") of Merrill Lynch who worked in its Electronic Communication Review Team ("ECRT"), located in Pennington, New Jersey (collectively, "Class Members") to recover unpaid overtime wages pursuant to the FLSA, the New Jersey Wage and Hour Law ("NJWHL"), and the New Jersey Wage Payment Law ("NJWPL").  Pechman Decl. ¶ 5.

Following extensive document discovery, numerous discovery disputes, an FLSA Collective Action conditional certification motion, and months of settlement discussions

---

[1]     Unless otherwise defined, all capitalized terms and abbreviations used in this memorandum of law are defined in the Parties' Joint Stipulation of Settlement and Release (the "Stipulation"), attached to the Declaration of Louis Pechman ("Pechman Decl.") as Exhibit 1.  Exhibits to the Stipulation are referenced here by the prefix "Ex." and the letter designated to them in the Stipulation (*e.g.*, "Pechman Decl., Ex. A" refers to the Settlement Notice annexed to the Stipulation, Ex. 1 § 2.4(C)).

between counsel, the Parties agreed to mediate their dispute before Dina Jansenson, Esq. of JAMS. *Id.* ¶¶ 12–26. On July 24, 2019, the Parties attended a 10-hour mediation session before Ms. Jansenson of JAMS. *Id.* ¶ 25. With her assistance, the Parties reached a settlement in principle. *Id.* Weeks later, they executed a term sheet and ultimately reduced their Settlement to the enclosed Stipulation. *Id.* ¶ 26; Ex. 1. Although Defendant denies and disputes liability and damages, or that the case may be adjudicated on a class or collective basis outside of settlement, it has agreed to pay $550,000.00 to settle all claims asserted on a class and collective action basis. Ex. 1 §§ 3.1(A), 3.11.

The Settlement is fair, reasonable, adequate, and the product of arm's length negotiations between experienced counsel. For the reasons set forth in further detail below, the Court should grant this unopposed Motion in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### I.    Factual and Procedural History and Settlement Discussions

On October 9, 2017, Porter filed a Complaint against Defendant seeking to recover alleged unpaid overtime wages on behalf of herself and all Class Members as putative collective and class actions under the FLSA, the NJWHL, and the NJWPL. Pechman Decl. ¶ 5. The Complaint alleges Merrill Lynch, as one of the largest broker-dealers in the country, is required by applicable regulations to review correspondences of certain of its employees. *Id.* ¶ 6. Porter alleges that she and the other Class Members reviewed these communications. *Id.*

According to Porter, Defendant had previously classified Class Members as non-exempt and paid them overtime wages. *Id.* ¶ 7. Porter claims Merrill Lynch subsequently reclassified Class Members as exempt and paid them on a salary basis even though they purportedly did not exercise independent judgment or discretion at work in performing their duties. *Id.* ¶¶ 7–8. Porter claims Class Members relied on guidelines set forth in

2

Merrill Lynch's "Operations Manual" and similar internal documents to perform their email review tasks. *Id.* ¶ 8. In particular, Porter alleges Class Members worked on the Autonomy Supervisor database ("Autonomy") to review emails, largely to ensure the database flagged emails correctly and to forward emails to higher-level employees for further review. *Id.* Porter claims activity and log-in/log-out reports from Autonomy could be used to determine the number of hours that Class Members worked per workweek. *See id.* ¶¶ 8–9, 21.

Porter filed an FLSA consent to sue form with her Complaint. *Id.* ¶ 10. Opt-In Plaintiff Christine Rojas filed her FLSA consent to sue form on October 25, 2017. *Id.* On November 15, 2017, Defendant filed its Answer denying all allegations of wrongdoing in the Complaint and denying the Litigation could proceed as a class or collective action. *Id.* ¶ 11. Throughout the majority of 2018, the Parties engaged in document discovery and brought numerous discovery disputes to the Court's attention. *Id.* ¶¶ 12–16. On April 25, 2018, Plaintiff filed a motion for conditional certification of an FLSA collective action, which was ultimately granted on November 11, 2018. *Id.* ¶ 15.

To avoid prolonged and expensive litigation, the Parties agreed in late March 2019 to postpone litigation deadlines and to pursue mediation on a class-wide basis before Dina Jansenson, Esq., an experience wage-and-hour mediator at JAMS. *Id.* ¶ 19. Between March and July 2019, the Parties exchanged over ten thousand documents, including Autonomy data for all 51 class members, participated in several conference calls, and drafted and exchanged mediation statements. *Id.* ¶¶ 14, 20–21. In July 2019, Porter's counsel calculated alleged damages on a class-wide basis relying in part on Autonomy data produced and on two key assumptions: (a) breaks in activity of less than 3.5 hours reflected in the Autonomy records constitute compensable time; and (b) Class Members worked 135% of the time reflected per workday in the Autonomy Records. *Id.* ¶ 22.

3

Defendant strongly denies and disputes these assumptions. *Id.* Based on these assumptions, Porter's counsel calculated the Class's highest potential damages, inclusive of FLSA liquidated damages, to be approximately $1,052,000.00. *Id.* ¶ 23.

On July 24, 2019, the Parties attended a ten-hour-long mediation session with Dina Jansenson at JAMS. *Id.* ¶ 25. At the end of the mediation, the Parties had agreed in principle on the Maximum Settlement Amount of $550,000.00 but could not agree on all terms needed to finalize a term sheet. *Id.* It was not until August 16, 2019, following additional negotiations, that the Parties agreed to all remaining terms and signed a term sheet. *Id.* They finalized the Stipulation in early November 2019. *See id.* ¶ 26; Ex. 1 at 25.

## II.    Proposed Settlement Terms

The Settlement provides for full resolution of all wage-and-hour claims under the FLSA and the New Jersey state laws. The primary settlement terms are:

1)      Defendant shall pay a Maximum Settlement Amount of $550,000.00, inclusive of fees and costs, which shall be administered by a third party and independent Claims Administrator, Rust Consulting, Inc., to be approved by the Court. Pechman Decl. ¶¶ 28, 32. Defendant will pay its employer payroll taxes separately from the Maximum Settlement Amount. *Id.* ¶ 28.

2)      Class Counsel will petition the Court for reimbursement of its costs incurred in prosecuting the litigation plus up to one-third (33.33%) of the Maximum Settlement Amount as attorneys' fees. *Id.* ¶ 30.

3)      The Claims Administrator will be paid Settlement Administration Expenses out of the Maximum Settlement Amount. *Id.* ¶ 31. The Claims Administrator shall be responsible for, *inter alia*, calculating the Individual Settlement Amounts of each Class Member; obtaining addresses of and forwarding Settlement Notices to each Class Member; establishing and administering the Escrow Account into which Defendant will deposit the Maximum Settlement Amount; monitoring responses to the Settlement Notice (*e.g.*, opt-outs and objectors); administering the Reserve Fund; and mailing the Settlement Notice and Settlement Checks. *Id.* ¶ 32.

4)      Class Counsel will petition the Court for service awards of $15,000.00 for Porter and $2,500.00 for Rojas. *Id.* ¶ 33.

5)      Of the Maximum Settlement Amount, $10,000.00 will be set aside as a Reserve Fund "to make payments to Class Members and/or FLSA Collective Members who were not previously identified, or whose allocation is increased, pursuant to Section

3.4." The Reserve Fund is meant to address, for example, any disputes by Class Members about how their payments were calculated under the Stipulation. Amounts remaining in the Reserve Fund following 180 days after the date the Agreement becomes effective will be donated to a charity jointly chosen by the Parties. *Id.* ¶ 34.

6)     The "Net Settlement Fund," which is the amount remaining of the Maximum Settlement Amount after deduction of Class Counsel's fees and costs, Service Awards, the Reserve Fund, and the Settlement Administration Expenses, will be used to calculate the Individual Settlement Amount of each Class Member. *Id.* ¶ 35.

7)     The Claims Administrator will calculate the number of weeks that each Class Member worked between October 9, 2015, and July 24, 2019 (or October 9 and 25, 2014, to July 24, 2019, for Porter and Rojas respectively). *Id.* Each week will be assigned a dollar value based on the Net Settlement Fund amount. Each Class Member will receive the same amount per week worked for Defendant during the Covered Period. *Id.* No Class Member will receive less than $100.00 as a payment. *Id.*

8)     All payments to Class Members under the Agreement will be treated 50% as wages under IRS Tax Form W-4 and 50% as non-wage compensation under IRS Tax Form W-9. *Id.* ¶ 41.

9)     In exchange for receipt of their Settlement Checks, Class Representatives and Qualified Class Members (*i.e.*, those who did not opt-out) release all New Jersey state law wage-and-hour claims against Releasees. *Id.* ¶¶ 38–39.

10)    In exchange for cashing their Settlement Check, Class Representatives and Claimants also release their FLSA wage-and-hour claims against Releasees. *Id.* ¶ 38.

11)    In exchange for their Service Awards as well as their Individual Settlement Amounts, Class Representatives release all claims they have, may have, or may have had against Releasees and agree not to be re-employed or employed by Defendant. *Id.* ¶ 40.

12)    Amounts in Unclaimed Checks revert back to Defendant. *Id.* ¶ 42.

## ARGUMENT

## I.     Preliminary Approval of the Settlement Is Appropriate

Federal courts, including the Third Circuit, favor resolution of collective and class action lawsuits by settlement. *See, e.g., Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–595 (3d Cir. 2010) (recognizing "strong presumption in favor of voluntary settlement" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "strong judicial policy in favor of

settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").  By reaching a reasonable settlement prior to dispositive motions or trial, parties in class actions avoid significant expense and delay and ensure recovery for the class.  *Ehrheart,* 609 F.3d at 594–95 ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

Approval of a proposed class action settlement is subject to the discretion of the district court.  *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard 'is left to the sound discretion of the district court.'" (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998))); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ("The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court.").  In exercising its discretion, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The preliminary settlement approval sought here "is not binding and may be conducted informally." *Singleton v. First Student Mgmt. LLC*, No. 13 Civ. 1744, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014).  Preliminary approval results only in the issuance of notice to Class Members, who can object to or opt-out of the Settlement. *See, e.g., Acevedo v. BrightView Landscapes, LLC*, No. 13 Civ. 2529, 2017 WL 1062377, at *6 (M.D. Pa. Mar. 21, 2017) (noting preliminary approval "allows the court to direct notice to the proposed class members"); *Zimmerman v. Zwicker & Assocs., P.C.*, No. 09-CV-3905, 2011 WL 65912, at *2 (D.N.J. Jan. 10, 2011) ("In the first step of the process a court makes a preliminary evaluation of the fairness of the settlement before directing that notice be given to the

6

settlement class."). "Preliminary approval . . . is granted unless a proposed settlement is obviously deficient." *Zimmerman*, 2011 WL 65912, at *2 (citation omitted). The Court will be able to evaluate the settlement in more detail at the final approval hearing with the benefit of the Class Members' input. *Cf. In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (granting preliminary approval as proper if there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness" later).

For the reasons set forth in further detail below, the Court should preliminarily approve the Settlement by adopting and so-ordering the Parties' propose Order (Ex. B).

## II.    The Class Satisfies Rule 23(a) and Rule 23(b)(3)

A settlement class should be certified if it meets the requirements of Rule 23(a) and 23(b). *See, e.g., Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011); *In re Prudential*, 148 F.3d at 308–09; *In re Amtrak Train Derailment in Philadelphia, Pa.*, No. 15-MD-2654, 2016 WL 1359725, at *2 (E.D. Pa. Apr. 6, 2016) ("[T]he Third Circuit . . . found that the certification of a settlement class can be appropriate, provided that the court ensures that the class meets the requirements of Rule 23."). A settlement-only class may be certified even if it might not satisfy every requirement of Rule 23. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (reasoning settlement-only class does not present intractable management problems "for the proposal is that there be no trial"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 304 (3d Cir. 2011) (same).

### A.    The Requirements of Rule 23(a) Are Met

Rule 23(a) establishes the four requirements for class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). For settlement purposes, each of these requirements is satisfied here. First, numerosity requires that "the class [be] so numerous that joinder of all members is impracticable." *Id.* 23(a)(1). When the class size exceeds 40 members, numerosity is generally satisfied.

*Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).  Here, the Class consists of 51 individuals.  Pechman Decl. ¶ 44.  Accordingly, numerosity is established.

Second, commonality examines whether "there are questions of law or fact [that are] common to the class."  Fed. R. Civ. P. 23(a)(2).  "[C]ommonality is satisfied where common questions generate common answers 'apt to drive the resolution of the litigation.'"  *Sullivan*, 667 F.3d at 300 (quoting *Dukes*, 131 S. Ct. at 2551).  The commonality standard of Rule 23(a)(2) will be satisfied if the plaintiff "share[s] at least one question of fact or law with the grievances of the prospective class."  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013).

Porter asserts Defendant misclassified her and all Class Members as exempt in the same location in the same period.  She claims all Class Members were paid on a salary basis and regularly worked in excess of forty hours per workweek on Autonomy.  In the settlement context, Porter submits these shared issues of fact and law establish the commonality requirement.  *See, e.g.*, *Singleton*, 2014 WL 3865853, at *4 (finding commonality requirement met in off-the-clock wage and hour suit where common policies applied to all class members in different locations); *Craig v. Rite Aid Corp.*, No. 08 Civ. 2317, 2013 WL 84928, at *6 (M.D. Pa. Jan. 7, 2013) (finding class of assistant managers met commonality requirement by alleging they were all misclassified).

Third, to satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  A representative party's claim is typical if it presents "common issues of law and fact that justify class treatment."  *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985).  The typicality requirement is often satisfied for the same reasons as the commonality requirement.  *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005).

Here, Porter alleges all Class Members worked for Defendant and performed the same duty in the same location for the same period and were equally misclassified. In the context of the certification of a settlement class, Porter submits her claims are typical of the claims of all proposed Class Members. *See, e.g., Singleton*, 2014 WL 3865853, at *4 (finding typicality requirement satisfied where representative party and class alleged "the exact same type of injury allegedly suffered as a result of the [Defendant's] conduct: underpayment for the work performed before and after [a shift]").

Rule 23(a) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In evaluating this requirement, courts consider: (1) whether the interests of the named plaintiff are sufficiently aligned with the interests of class members; and (2) whether plaintiff's counsel is qualified to represent the class. *In re Cmty. Bank*, 418 F.3d at 303. Here, Plaintiff has demonstrated through her efforts on behalf of the Class Members that she shares an interest in obtaining redress from Defendant for alleged violations of the FLSA and New Jersey wage-and-hour laws. Porter and Rojas claim they and their counsel seek to prove Defendant purposely misclassified and failed to pay the Class Members overtime wages. Therefore, Porter and Rojas assert they share the same interest with all Class Members and should be appointed Class Representatives. *See* Pechman Decl. ¶ 31.

As is set forth in the Pechman Declaration, Class Counsel has extensive experience litigating and settling other large wage-and-hour class actions. *Id.* ¶¶ 51, 53–61. In consultation with Porter and Rojas, Class Counsel has worked diligently and vigorously to pursue the Class's claims to maximize recovery, as well as to negotiate and obtain the favorable Settlement presented here. *Id.* ¶ 51. Class Counsel conducted significant amounts of discovery and investigated public and non-public sources relating to the claims alleged; reviewed and analyzed tens of thousands of pages of documents

produced during discovery; researched the applicable law with respect to the claims alleged and Defendant's potential defenses; undertook arm's length negotiations; and devised a plan to allocate the benefits of the Settlement that will ensure that all Class Members are treated fairly and reasonably. *Id.* ¶¶ 12–27, 47, 49, 51.

## B.   The Requirements of Rule 23(b) Are Met

After satisfying the requirements of Rule 23(a), a class may be certified if a subsection of Rule 23(b) is met. Fed. R. Civ. P. 23(b). Here, for settlement purposes, certification is appropriate under Rule 23(b)(3), which requires that (1) common questions of fact or law predominate over individual questions; and that (2) a class action be a superior method to adjudicate the controversy fairly and efficiently. *Id.* 23(b)(3). Since certification is occurring in a settlement context, there will be no trial and the Court need not make the manageability finding that is otherwise required under Rule 23(b)(3).

Predominance generally "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. "[T]he focus of the predominance inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct." *Sullivan*, 667 F.3d at 298. Although common questions must outweigh those of individual class members, the existence of individual questions of fact does not *per se* preclude class certification. *In re Remeron End-Payor Antitrust Litig.*, No. 02-Civ-2007, 2005 WL 2230314, at *11–12 (D.N.J. Sept. 13, 2005) (citing *Esienberg*, 766 F.2d at 787). For example, courts have concluded that "the need to determine damages on a claim-by-claim basis does not undermine [] predominance." *DeMaria v. Horizon Healthcare Servs., Inc.*, No. 11-7298 (WJM), 2015 WL 3460997, at *9 (D.N.J. June 1, 2015).

Here, predominance is satisfied for settlement purposes because Porter alleges Defendant equally misclassified all Class Members to avoid paying them overtime

10

wages.  *See, e.g., In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06–3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009) (finding predominance met where plaintiffs alleged common course of conduct based on defendant's employment policies).

The superiority analysis considers three factors: (1) Class Members' individual interest in controlling the prosecution of the action; (2) the extent of similar litigation previously commenced by members of the class; and (3) the desirability of concentrating the litigation in the particular forum.  Fed. R. Civ. P. 23(b)(3).

Here, Porter contends Class Members have little interest in prosecuting separate actions because each Class Member stands to recover damages that may not support an individual action.  *See, e.g.*, Pechman Decl. ¶ 49 (estimating lowest and highest Individual Settlement Payments of $163.71 and $10,750.30 in preliminary calculations); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."); *Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207 (D.N.J. 2005) ("[S]ince the financial losses of most of the Class Members is relatively small, very few would have an interest or ability to pursue their own individual case."). In any event, Class Members will have an opportunity to opt-out of the Settlement, as set forth in the Settlement Notice.  *See* Pechman Decl. ¶ 37; Ex. A § 4.

Class Counsel is not aware of duplicative actions filed by any Class Member.  *Id.* ¶ 48.  Courts have found this demonstrates a lack of interest in pursuing separate claims. *See In re Prudential*, 148 F.3d at 316 ("[The] relatively small number of individual suits pending against Prudential indicated that the individual policy holders lack a compelling interest to control the prosecution of their own claims.").  In contrast to the inefficiency of prosecuting dozens of individual actions, resolving all Class Members' claims in this Litigation substantially preserves resources.  *In re Remeron*, 2005 WL 2230314, at *12.

Therefore, Rule 23(b)(3) is satisfied for settlement purposes.

### III.   The FLSA Collective Action Should Be Certified

The FLSA Collective Action should be re-certified for settlement purposes for the reasons set forth above under the more stringent requirements of Rule 23 certification. *See supra* Section II; *Hall v. Best Buy Co.*, 274 F.R.D. 154, 167, n. 68 (E.D. Pa. 2011) ("By meeting the more stringent requirements of Rule 23, the class likewise may be certified as a collective action.").   Courts in the Third Circuit apply the "*Lusardi* factors" to determine whether to certify an FLSA opt-in class: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [the defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations."  *Bredbenner v. Liberty Travel, Inc.*, No. Civ. 09-905, 09-1248, 09-4587 (MF), 2011 WL 1344745, at *17 (D.N.J. Apr. 8, 2011) (quoting *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D.N.J. 1987) )), *vacated in part sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988).  "Because the analysis required for final certification largely overlaps with class certification analysis under Federal Rule of Civil Procedure 23(a), the Court need only address the *Lusardi* factors in passing" for settlement purposes here.  *Id.* at *17 (internal quotations and alterations omitted).

As set forth above, *supra* Section II, Porter contends Defendant's alleged misclassification of and failure to pay overtime wages to Class Members is not based on "disparate factual and employment settings." *Bredbenner*, 2011 WL 1344745, at *17.  The policies and practices of Defendant are alleged to have happened at one location in New Jersey.  Pechman Decl. ¶¶ 5–8.  Accordingly, Class Representatives submit there can be no individualized defenses against any Class Member and so the Court should grant preliminary certification of the collective action to facilitate this Settlement.  *See, e.g.*, *Singleton*, 2014 WL 3865853, at *3.

Class Representatives further assert fairness and procedural considerations tip decidedly in favor of certifying the FLSA Collective Action for settlement purposes. The Settlement Notice explains each Class Member's rights, including the rights to opt-out of the class or object to the Settlement, and how Individual Settlement Payments will be calculated (*i.e.*, based on the number of weeks worked). Pechman Decl. ¶¶ 36–37. The proposed settlement structure, whereby Class Members opt-in to the FLSA Collective Action by cashing their checks, has been accepted by other courts in the Third Circuit. *See, e.g.*, *Fein v. Ditech Fin., LLC*, No. 5:16-cv-00660, 2017 WL 4284116, at *7 n. 7 (E.D. Penn. Sept. 27, 2017) ("FLSA Collective Members will opt in by cashing the checks they receive pursuant to the Settlement Agreement."); *Acevedo v. BrightView Landscapes, LLC*, No. 3:13-2529, 2017 WL 1062377 (M.D. Penn. Mar. 21, 2017) (approving settlement where collective members "consent and agree to join this lawsuit" by "signing and cashing this check").

Thus, the Court should certify the FLSA collective action for settlement purposes.

## IV.    The Proposed Settlement Is Fair, Adequate, and Reasonable

Rule 23(e) requires class action settlements to be approved by a district court. Fed. R. Civ. P. 23(e). Likewise, the FLSA generally requires settlements to be approved by the district court or the Department of Labor. *See, e.g.*, *Davis v. Essex Cnty.*, No. 14-cv-l122 (CCC-JBC), No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

The Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and, if so, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. In reviewing a proposed class action settlement, courts consider whether it is "fair, adequate, and reasonable." *Lazy Oil, Co. v. Witco Corp.*,

95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999); *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995).  In conducting this review, courts are mindful that settlement is the preferred method for resolving class action lawsuits.  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

Class action settlement approval involves a two-step process: (1) preliminary approval of the settlement and notice to all class members; and (2) a final fairness hearing.  *See Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015).  In making the preliminary approval determination at issue in this Motion, courts examine whether (1) the negotiations resulting in the proposed settlement occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.  *In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001).  An initial presumption of fairness applies if the four factors are met.  *In re Warfarin*, 391 F.3d 535; *In re Gen. Motors*, 55 F.3d at 785; *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007) (stating preliminary approval will be granted absent obvious deficiencies in the settlement).

At the final approval stage, courts also consider the *Girsh* factors:

1) the complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the proposed settlement;
3) the stage of the proceedings, and amount of discovery completed;
4) risks of establishing liability;
5) risks of establishing damages;
6) risks of maintaining a class through trial;
7) the ability of defendant to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh*, 521 F.2d at 156–57 (3d Cir. 1975).

The proposed Settlement is entitled to a presumption of fairness under *In re Cedant* and its progeny.  Furthermore, although the *Girsh* factors will be analyzed in further detail in Plaintiff's future motion seeking final approval of the Settlement, the proposed Settlement already satisfies several *Girsh* factors and should be preliminarily approved.

A.      **The Court Should Presume that the Settlement Is Fair**

The settlement is presumptively fair.  First, the proposed Settlement was a product of arm's length negotiations.  As is explained in more detail below, Class Counsel calculated what they contend are Defendant's highest potential exposure after analyzing tens of thousands of pages of information.  Pechman Decl. ¶ 23.  The Parties disputed, and continue to dispute, the assumptions underlying the damages calculations.  *Id.* ¶ 22. After a full day of extensive negotiations before a neutral mediator, followed by weeks of continued negotiations, the Parties reached a settlement in principle.  *Id.* ¶ 25.

Second, the Parties' attorneys are competent and experienced in wage-and-hour collective and class actions.  Class Counsel, Pechman Law Group PLLC, is a well-respected New York City labor and employment law firm that has litigated hundreds of wage-and-hour cases on behalf of both employees and management.  Pechman Decl. ¶¶ 56–61.  The Law Offices of Mitchell Schley is a labor and employment law firm experienced in wage-and-hour practice.  *Id.* ¶¶ 53–55.  Defendant is represented by Morgan, Lewis & Bockius LLP, an AmLaw 100 firm with one of the most highly respected management-side practices in the country.  The Parties' attorneys have the experience necessary to conduct a fair and adequate assessment of the strengths and weaknesses of their clients' respective claims and defenses in the Litigation and, based on that assessment, to recommend a reasonable settlement.  Because of this and Class Counsel's close involvement in the prosecution of the Litigation, Class Counsel's recommendation of settlement approval is entitled to significant weight.  *See, e.g., Austin v. Pa. Dep't of Corr.,*

876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the best interest of the class."); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) (counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

Last, the Court will be able to evaluate the merit of objections, if any, to the Settlement after granting preliminary approval and allowing the Settlement Notice to be distributed to the Class Members.

### B.     The *Girsh* Factors Tip in Favor of Preliminary Approval

"While the issue of final settlement approval is not presently before the Court, it is important to consider the final approval factors during this stage so as to identify any potential issues that could impede the [settlement's] completion." *Singleton*, 2014 WL 3865853, at *5. To the extent they apply at this preliminary stage, the *Girsh* factors tip decidedly in favor of settlement approval.

### 1.     Complexity, Expense, and Duration of Litigation

The issues in the Litigation are complex and ultimately rest on heavily contested facts. For example, Defendant denies any Class Member was misclassified and, in opposition to Plaintiff's motion for conditional certification, produced several affidavits calling into question Porter's characterization of the work duties Class Members performed. *See* ECF No. 21. Defendant further asserts it acted at all times in good faith. Porter disputes Defendant's affidavits and assertions, claiming Class Members' duties were different than those Defendant represented. *See* ECF No. 29. These issues can only be resolved through prolonged discovery, including dozens of depositions of managers and potential Class Members, dispositive motion practices, and potentially trial.

By reaching a mutually acceptable settlement prior to class and collective action certification briefing, depositions, dispositive motions, possibly a trial, and possibly appeals, the Parties have reduced their risks and avoided significant expense and delay. *See Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 311 (E.D. Pa. 2012) (finding first *Girsh* factor in favor of settlement approval where approval was sought before dispositive motion practice). The first *Girsh* factor therefore weighs in favor of preliminary approval.

### 2.      Reaction of the Class to the Settlement

Class Counsel and the Class Representatives believe the Settlement is fair and reasonable and should be approved. Pechman Decl. ¶ 45.

### 3.      Stage of Proceedings and Amount of Discovery Completed

The parties must have an "adequate appreciation of the merits of the case before negotiating." *In re Cedant Corp.*, 264 F.3d at 235. Here, the Parties exchanged and analyzed tens of thousands of pages of data, Defendant's policies and handbooks, affidavits, and Autonomy logs. Pechman Decl. ¶¶ 13–14, 21. This information is necessary to evaluate liability and damages and to determine whether class-wide litigation may be possible. In light of the discovery exchanged, the Parties were able to negotiate at arm's length with "a clear view of the strengths and weaknesses of their case." *See Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003). As such, the third *Girsh* factor weighs in favor of preliminary approval.

### 4.      Risks of Establishing Liability and Damages and Risks of Maintaining a Class Action Through Trial

Continuing the Litigation would expose the Parties to significant litigation risks highlighted in the fourth, fifth, and sixth *Girsh* factors, all of which militate in favor of granting preliminary settlement approval. *See, e.g., Singleton*, 2014 WL 3865853, at *6 (listing risks of proceeding with class action involving wage-and-hour claims). Although

17

the Parties believe they have strong claims or defenses, they recognize they also face significant litigation costs and delays should the Litigation continue.

This case rests predominantly on determining the work duties Class Members performed.  Porter claims they did not exercise independent judgment or discretion.  *See* ECF Nos. 16, 22.  Defendant denies this with employees' testimony.  *See* ECF No. 21. Defendant argues there is no common basis on which to determine the job duties performed by each Class Member on a day-to-day basis.  Furthermore, Defendant argues that to the extent there are any damages in this matter, which it denies, they would be *de minimis*.  As noted, Defendant takes significant issue with Plaintiff's damages calculations and underlying assumptions and asserts that potential damages in this Litigation would be a fraction of Plaintiff's calculations.  Pechman Decl. ¶¶ 22–24.  Given the numerous disputes, which go both to the merits of the Litigation and to the calculation of potential damages, the Court should allow the Parties to "yield[] the[ir] highest hopes in exchange for certainty and resolution."  *In re Gen. Motors Corp.*, 55 F.3d at 806.

Although a collective action was conditionally certified in this Litigation, the Parties strongly dispute whether certification of either class should continue.  In this regard, the Court warned in its opinion that "Plaintiff will face a significant hurdle to show that all Email Reviewers at Merrill's [ECRT] were, in fact, similarly situated."  ECF No. 34 at 8.  If the Litigation proceeds, there is no guarantee the classes can be maintained through trial.  Therefore, the fourth, fifth, and sixth *Girsch* factors weigh heavily in favor of preliminary settlement approval.

### 5.    Reasonableness of Recovery in Settlement

The reasonableness of the settlement fund in light of the highest potential recovery and the litigation risks discussed above (the eighth and ninth *Girsh* factors) weigh

strongly in favor of preliminary approval, even though Defendant could probably withstand a higher judgment (the seventh *Girsh* factor).

Relying on Autonomy data and its damages-related assumptions, however disputed they may be, Class Counsel calculated the highest possible damages for the class to be approximately $1,052,000.00 inclusive of liquidated damages under the FLSA. Pechman Decl. ¶¶ 22–23.  That is, Class Counsel calculated the highest possible unpaid overtime wages for the Class to be approximately $533,000.00.  *See id.*  The Maximum Settlement Fund exceeds this amount by approximately $20,000.00.  As such, it represents a fair and appropriate amount equal to over 100% of Defendant's highest alleged exposure, exclusive of liquidated damages.  The Maximum Settlement Amount also represents a fair value in light of the attendant risks of litigation, even though a greater recovery may be possible if Porter were 100% successful in every phase of the Litigation, including possible appeals.  If Defendant prevailed in its defenses, such as the exemption defenses, the Class would not recover anything.  If Defendant prevailed in decertifying the class, Porter would have to litigate her claims alone, in which case any potential recovery would be *de minimis* compared to the Maximum Settlement Amount.

It is well established that a settlement in a class action can be appropriate even where the settlement amount is only a percentage of the Class's highest potential recovery.  *See Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *16 (D.N.J. 2006) (approving $15 million settlement, though maximum exposure at trial could have been as high as $104 million, because of the "magnitude of the risks in litigation"). In examining the reasonableness of a settlement, courts do not speculate about the Class's highest possible recovery.  Rather, courts consider the risk of little or no recovery at all. *See Varacallo*, 226 F.R.D. at 240 ("This Settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks

of litigation—little or no recovery at all.").  In view of the risks and disputes discussed above, the eighth and ninth *Girsch* factors weigh in favor of preliminary approval.

### C.    The Proposed Settlement Is Fair and Reasonable under the FLSA

Whether to approve the settlement of an FLSA collective action is within this Court's discretion.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("[W]e allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.").  In its analysis, the Court should be "mindful of the strong presumption in favor of settlement."  *Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012) (citing *Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)).

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner*, 2011 WL 1344745, at *18 (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).  The adversarial nature of a litigated FLSA case is typically an adequate guarantor of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  A proposed settlement should be approved if it "represents a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'"  *Bredbenner*, 2011 WL 1344745, at *18 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The Parties dispute whether: (1) Defendant violated the FLSA by allegedly misclassifying Class Members and failing to pay them overtime wages; (2) Defendant willfully violated the FLSA; (3) Class Members actually performed the same tasks and are similarly situated; and (4) Porter can maintain a collective action on behalf of all allegedly similarly situated Class Members.  Assuming liability were established, the Parties further dispute the extent of damages owed to the putative Class Members.  For example, Defendant claims some Class Members performed managerial duties.  *See, e.g.*, ECF No. 21.  Thus, the proposed Settlement resolves bona fide disputes.  *Bredbenner*, 2011

WL 1344745, at *18 (approving settlement where "'disagreements over hours or compensation due' clearly established a bona fide dispute" and the "institution of a federal court litigation" coupled with "aggressive prosecution and strenuous defense demonstrate[d] the palpable bona fides of this dispute").

The Maximum Settlement Amount is a fair value in light of the risks of litigation discussed above, even though recovery could be greater if the collective action could be maintained and were 100% successful through trial and survived appeals.

Finally, public policy strongly favors settlements, because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). The Settlement here is consistent with this policy, because it resolves a pending action on behalf of a potential opt-in class of 51 employees and avoids a potential jury trial and appeals. Because the Settlement represents a fair resolution of bona fide disputes, public policy weighs heavily in favor of its approval. *Id.*; *see also Farris*, 176 F.3d at 711.

## V.    The Proposed Notice Materials and Notice Issuance Plan Are Adequate

Pursuant to Rule 23(c)(2)(B), class action notices must be clear, concise, and written in "easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Class members must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." *Id.* Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afforded them an opportunity to present their objections." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174 (1974). "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). Consistent with the Rule, mailing of notices to each class member has been recognized as satisfying the "best practicable notice" requirement. *Eisen*, 417 U.S. at 175.

The proposed Settlement Notice (Ex. A) satisfies the clear, concise, and easily understood language requirements of Rule 23.  It explains to each Class Member in plain English: the nature of the Litigation and Settlement; the claims and disputed issues; the Settlement amounts; the basis of the Individual Settlement Amounts and how they will be calculated; how to opt-out of the Settlement; the rights that will be waived in exchange for opting out or remaining in the class and/or doing nothing; and how to object to the Settlement.  *See* Ex. A.  The Settlement Notice also makes clear that Class Counsel will seek recovery of costs incurred in prosecuting the Action plus one-third of the Maximum Settlement Amount as attorneys' fees.  *Id.* Ex. A § 1.  The Settlement Notice will reflect each Class Member's approximate Individual Settlement Amount.  *See id.* Ex. A § 2.  The Settlement Notice also provides information necessary under the FLSA for Class Members to make an informed and intelligent decision as to whether to participate in the Settlement by opting in as a Claimant.  *See* 29 U.S.C. § 216(b); *see also supra* Section III.

Finally, the proposed Settlement Notice is the best and most practicable method of notifying the Class Members of the proposed Settlement.  Within fourteen days of the Court's entering of the Preliminary Approval Order (Ex. B), Defendant will provide the Claims Administrator with a list of each Class Member's name, last known email and mailing address, and Applicable Workweeks.  Ex. 1 § 2.4(A).  Thereafter, the Claims Administrator will distribute the Settlement Notice by first class mail and email to all Class Members.  *Id.* § 2.4(C).  The Claims Administrator will also use all available devices and information, such as the National Change of Address database, to obtain Class Member's forwarding addresses before mailing the Settlement Notices.  *Id.* § 2.4(B).  For mailings returned as undeliverable, the Claims Administrator will use skip tracing to attempt to locate new mailing addresses.  *Id.* § 2.4(D).

## VI.   The Court Should Appoint the Claims Administrator and Order It to Distribute the Notice Materials to the Class Members

The Parties have jointly designated Rust Consulting, Inc. as the proposed Claims Administrator.  As noted, the Claims Administrator will be paid out of the Maximum Settlement Payment Fund.  Pechman Decl. ¶ 31.  It estimates its fees to be approximately $10,000.00.  *Id.*  As reflected in its website (https://www.rustconsulting.com/about, last visited on November 8, 2019), Rust Consulting, Inc. is an experienced claims administrator expected to satisfy its obligations under the Stipulation.  Accordingly, the Court should appoint it as Claims Administrator and order it to distribute the Settlement Notice to the Class Members, as set forth in the Stipulation.

## VII.   Plaintiff's Counsel Should Be Appointed Class Counsel

Rule 23(g) sets forth the standards for appointment of class counsel.  Fed. R. Civ. P. 23(g).  Courts must consider four factors when appointing class counsel:  (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class.  *Id.* 23(g)(1)(A)(i)–(iv).  Class counsel must "fairly and adequately represent the interests of the class."  *Id.* 23(g)(4).  The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interest of the class."  *Id.* 23(g)(1)(B).

Plaintiff's attorneys meet all criteria.  As set forth in the Pechman Declaration, counsel have expended substantial time and effort in this Litigation.  *See* Pechman Decl. ¶¶ 12–27, 47, 49, 51.  They have significant experience prosecuting and settling wage-and-hour class actions, are fully aware of controlling law and its impact on the Litigation, and are qualified to continue to represent the interests of the Class Members fairly and

adequately.  *See* Pechman Decl. ¶¶ 53–61.  Counsel have performed significant work to commence and prosecute this case, litigate discovery disputes, conduct discovery, calculate damages and analyze underlying calculation assumptions, and settle this matter with the help of Ms. Jansenson.  *See id.* ¶¶ 12–27, 47, 49, 51.  Counsel have committed significant resources to date in the prosecution of this matter, which enabled the Class Representatives and Class Members ultimately to obtain the proposed Settlement.

Therefore, the Court should appoint Pechman Law Group PLLC and The Law Offices of Mitchell Schley, LLC as Class Counsel pursuant to Rule 23(g).

**VIII.  Class Representatives' Proposed Service Awards Are Reasonable**

Although the Class Representatives' service awards will be discussed in further detail in their motion for final settlement approval, they are briefly addressed as presumptively fair and reasonable.  Service or incentive awards "are fairly common in class action lawsuits involving a common fund for distribution to the class."  *Bredbenner*, 2011 WL 1344745, at *22.  The purpose of incentive awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of the class action litigation,' and to 'reward the public service' for contributing to the enforcement of mandatory laws."  *Id.* (internal citations omitted).

The combined service awards requested here, $17,500.00, represent a tiny fraction (3.18%) of the Maximum Settlement Payment Fund, and individually are well within the range of service awards regularly approved in class actions by courts in the Third Circuit.  *See, e.g., id.* at *23 (collecting cases in which class representatives were awarded between $3,000.00, on the low end, to $30,000.00, on the high end, as service awards).

Porter, the sole named Plaintiff, was directly involved in the Litigation since before its filing by providing all facts necessary for the drafting and revision of the Complaint, such as the work duties she and other Class Members performed and Defendant's alleged

misclassification practices.  After the Complaint was filed, she took the burden associated with being the only named Plaintiff by, for example, replying to document requests and interrogatories with counsel.   Porter and Rojas reviewed thousands of pages of documents in anticipation of the mediation and in the midst of discovery disputes.  They both attended the mediation on July 24, 2019, to assist in settlement negotiations by, for example, answering Ms. Jansenson's questions.  They have performed sufficient work that was instrumental in obtaining the proposed Settlement and should receive the service awards requested.  *See, e.g.*, *Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16–cv–6054, 2017 WL 2986300, at *7 (E.D. Pa. July 13, 2017) (approving $10,000.00 service award to each plaintiff involved in commencing action and "willing to assume the risk associated with being a named plaintiff in a class action").

## IX.    The Court Should Preliminarily Approve Class Counsel's Request for Fees and Costs

Although a determination of the reasonableness of Class Counsel's requested fees and costs should be reserved for the Final Settlement Approval Hearing, after the Settlement Notice has been sent to all Class Members and objections, if any, have been identified, it is worth noting Class Counsel's fees are requested as a percentage of settlement fund.  *See* Pechman Decl. ¶ 30.  Courts prefer the percentage of the fund method for calculating attorneys' fees and costs in class actions.  *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *19 (noting "percentage-of-recovery method to award attorneys' fees in common fund cases" is the "prevailing methodology used by courts in this Circuit for wage-and-hour cases"); *Brown*, 2017 WL 2986300, at *5 (same, and stating it "is also more appropriate to use the percentage-of-recovery method where, as here, the settlement releases Defendant from both damages and attorneys' fees").

Courts in this Circuit regularly award attorneys' fees ranging from nineteen percent (19%) to forty-five percent (45%) of the class action settlement fund. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *18 (awarding 32.6% of settlement fund, totaling $978,353.16, plus costs of $11,646.84, in wage and hour class action); *In re Gen. Motors Corp.*, 55 F.3d at 822; *Brown*, 2017 WL 2986300, at *6 ("[T]he Honorable Jose Linares has stated that '[t]he Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund' in common fund cases and then cited several cases in which awards in the range of one-third were awarded.") (quoting *Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases.") (collecting cases)).

Here, Class Counsel requests a fee award of 33.33% of the Maximum Settlement Payment Fund ($181,333.33). Ex. 1 § 3.2(A). Class Counsel will further substantiate this request, as well as its separate request for costs not to exceed $10,000.00, when it submits documents in support of the Final Settlement Approval in anticipation of the Fairness Hearing. At this preliminary settlement stage, an initial determination that the fee request is reasonable is appropriate.

## X.    A Final Settlement Approval Hearing Should Be Scheduled

The Court should schedule a Final Settlement Approval Hearing to determine whether final approval of the Settlement is appropriate. The Final Settlement Approval Hearing will provide a forum to explain, describe, or challenge the terms and conditions of the Settlement, including its fairness, adequacy, and reasonableness. Class Counsel will present their application for fees and costs pursuant to Federal Rule of Civil Rule 23(h) at Final Settlement Approval Hearing. They will also make an application for the Class Representatives' Service Payments.

26

Therefore, Porter and Rojas request that the Court schedule the Final Settlement Approval Hearing at the United States District Court for the District of New Jersey for no earlier than ninety (90) days from the date that the Settlement Notice is issued to the Class Members, as required by 28 U.S.C. § 1715(d).

## CONCLUSION

For all of the foregoing reasons, the Class Representatives respectfully requests that the Court grant this Motion in its entirety and enter the Proposed Preliminary Approval Order, attached to the Pechman Declaration as Exhibit B to Exhibit 1.

Dated:   New York, New York
         November 11, 2019

PECHMAN LAW GROUP PLLC

By:      s/ Louis Pechman
         Louis Pechman, Esq.
         Gianfranco J. Cuadra, Esq.
         488 Madison Avenue, 17th Floor
         New York, New York 10022
         Tel.:  (212) 583-9500
         pechman@pechmanlaw.com
         cuadra@pechmanlaw.com


THE LAW OFFICES OF MITCHELL SCHLEY, LLC

By:      s/ Michell Schley
         Mitchell Schley, Esq.
         197 Route 18, Suite 3000
         East Brunswick, NJ 08816
         Tel.:  (732) 325–0318

*Attorneys for Plaintiff Jennifer Porter, the Putative Rule 23 Class, and the Putative FLSA Collective*

27