**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JENNIFER PORTER, on behalf of herself and all others similarly situated, <br><br>                 Plaintiff, <br><br>    v. <br><br> MERRILL LYNCH PIERCE FENNER & SMITH, INC., <br><br>                 Defendant. | 3:17-cv-08043 (FLW)(TJB) |

---

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

---

PECHMAN LAW GROUP PLLC

Louis Pechman, Esq.
Gianfranco J. Cuadra, Esq.
488 Madison Avenue - 17th Floor
New York, New York 10022
Tel.: (212) 583–9500

LAW OFFICES OF MITCHELL SCHLEY, LLC

Mitchell Schley, Esq.
197 Route 18, Suite 3000
East Brunswick, NJ 08816
Tel.: (732) 325–0318

*Attorneys for Plaintiff Jennifer Porter, the Rule 23*
*Class, and the FLSA Collective*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iii-iv

PRELIMINARY STATEMENT ........................................................ 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY ............................ 1

I.      FACTUAL AND PROCEDURAL HISTORY AND SETTLEMENT
        DISCUSSIONS .......................................................................... 1

II.     EVENTS SINCE PRELIMINARY APPROVAL ................................ 3

III.    TASKS REMAINING TO COMPLETE SETTLEMENT FOLLOWING
        COURT APPROVAL .................................................................. 6

ARGUMENT ................................................................................ 7

I.      FINAL APPROVAL OF THE SETTLEMENT IS APPROPRIATE .......... 7

II.     THE PROPOSED SETTLEMENT IS FAIR, ADEQUATE, AND
        REASONABLE ........................................................................ 9

        A.      THE COURT SHOULD PRESUME THAT THE SETTLEMENT IS
                FAIR ............................................................................ 9

        B.      THE *GIRSH* FACTORS TIP IN FAVOR OF FINAL APPROVAL .............. 11

                1.      COMPLEXITY, EXPENSE, AND DURATION OF
                        LITIGATION ........................................................ 11

                2.      REACTION OF THE CLASS TO THE SETTLEMENT .............. 12

                3.      STAGE OF PROCEEDINGS AND AMOUNT OF
                        DISCOVERY COMPLETED ...................................... 13

                4.      RISKS OF ESTABLISHING LIABILITY AND DAMAGES
                        AND  OF MAINTAINING A CLASS ACTION
                        THROUGH TRIAL .................................................. 14

                5.      REASONABLENESS OF RECOVERY IN SETTLEMENT .......... 15

        C.      THE PROPOSED SETTLEMENT IS FAIR AND REASONABLE
                UNDER THE FLSA ........................................................ 16

III.    THE COURT SHOULD APPROVE CLASS COUNSEL'S REQUESTED
        ATTORNEYS' FEES .................................................................. 18

**IV.**   **THE COURT SHOULD APPROVE CLASS COUNSEL'S COSTS REQUESTED** ...................................................................................**23**

**V.**   **THE COURT SHOULD APPROVE THE SERVICE AWARDS REQUESTED** ...................................................................................**24**

**VI.**   **THE COURT SHOULD GRANT RUST THE SETTLEMENT ADMINISTRATION EXPENSES REQUESTED** ...................................................**25**

**CONCLUSION** ........................................................................................................ **25**

## TABLE OF AUTHORITIES

### CASES

*Abrams v. Lightolier, Inc.*, 50 F.3d 1204 (3d Cir. 1995) ............................................................23

*Austin v. Pennsylvania Department of Correction*, 876 F. Supp. 1437 (E.D. Pa. 1995) ..........10

*Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304 (3d Cir. 1993) ........................................................13

*Bonett v. Education Debt Services, Inc.*, No. 01-6528, 2003 WL 21658267, at *1
(E.D. Pa. May 9, 2003)...........................................................................................................13

*Bredbenner v. Liberty Travel, Inc.*, No. 09–905, 2011 WL 1344745, at *18
(D.N.J. April 8 ,2011).................................................................................................17, 22, 24

*Brown v. Progressions Behavioral Health Services, Inc.*, No. 16–cv–6054, 2017 WL
2986300, at *1 (E.D. Pa. July 13, 2017)............................................................................18, 25

*Brunley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012
WL 1019337, at *1 (D.N.J. Mar. 26, 2012) ...........................................................................22

*Bullock v. Administration of Estate of Kircher*, 84 F.R.D. 1 (D.N.J. 1979) ...............................11

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)........................................7

*Chemi v. Champion Mortgage*, No. 2:05–cv–1238(WHW), 2009 WL 1470429, at *1
(D.N.J. May 26, 2009)............................................................................................................19

*Cruz v. JMC Holdings, Ltd.*, No. 16–9321, 2019 WL 4745284, at *1 (D.N.J. Sept.
30, 2019) ................................................................................................................................22

*D.R. by MR. v. Eat Brunswick Board of Education*, 109 F.3d 896 (3d Cir. 1997) ....................17

*Davis v. Essex County*, No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *1
(D.N.J. Dec. 1, 2015) ...............................................................................................................7

*Dominguez v. Galaxy Recycling Inc.*, No. 12–7521 (LDW), 2017 WL 2495406,
at *1 (D.N.J. June 9, 2017) .....................................................................................9, 11, 20, 22

*Ehrheart v. Verizon Wireless*, 609 F.3d 590 (3d Cir. 2010) ....................................................... 8

*Farris v. J.C. Penney, Inc.*, 176 F.3d 706 (3d Cir. 1999) ................................................... 16, 18

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)............................................................................ 8, 11

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000)............................................ 19

*Halley v. Honeywell International, Inc.*, 861 F.3d 481 (3d Cir. 2017)........................................ 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)..............................................................9

*Hegab v. Family Dollar Stores, Inc.*, No. 11–1206(CCC), 2015 WL 1021130, at *1
    (D.N.J. Mar. 9, 2015).................................................................................................................13

*In re AT&T Corp. Securities Litigation*, 455 F.3d 160 (3d Cir. 2006).......................................22

*In re Cedant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .................................................... 9, 13, 22

*In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ................................................ 8, 13, 15

*In re Prudential Insurance Company of America Sales Practice Litigation Agent
    Actions*, 148 F.3d 283 (3d Cir. 1998)...................................................................................8, 22

*In re Safety Components, Inc. Securities Litigation*, 166 F. Supp. 2d 72 (D.N.J. 2001) ..... 22, 23

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir. 2004)................................. 8

*Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479 (E.D. Pa. 1975) ...............................................11

*Lazy Oil, Co. v. Witco Corp.*, 95 F. Supp. 2d 290 (W.D. Pa. 1997), *aff'd*, 166
    F.3d 581 (3d Cir. 1999) ..............................................................................................................8

*Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *1
    (D.N.J. 2006) .............................................................................................................................16

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)..................... 7, 16, 17

*Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J.
    Mar. 14, 2012)...........................................................................................................................16

*Ripley v. Sunoco, Inc.*, 287 F.R.D. 300 (E.D. Pa. 2012) ............................................................12

*Singleton v. First Student Management LLC*, No. 13 Civ. 1744, 2014 WL 3865853,
    at *1 (D.N.J. Aug. 6, 2014) ......................................................................................................14

*Smith v. Professional Billing & Management Services, Inc.*, No. 06-4453 (JEI), 2007
    WL 4191749, at *1 (D.N.J. Nov. 21, 2007) ...............................................................................9

*Varacallo v. Massachusetts Mutual Life Insurance Co.*, 226 F.R.D. 207 (D.N.J. 2005) ........... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005)................................ 8, 23

*Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015
    WL 333465, at *1 (D.N.J. Jan. 23, 2015) ..................................................................................9

**RULE**

Fed. R. Civ. P. 23.............................................................................................................................7

iv

## PRELIMINARY STATEMENT

By this unopposed Motion, Class Representatives[1] Jennifer Porter and Christine Rojas respectfully request, on behalf of themselves and all Class Members, that the Court grant final approval of the Parties' Settlement, as embodied in the Stipulation.  *See* Pechman, Decl. Ex. 1.  The Court preliminarily approved the Settlement by Order dated February 14, 2020.  *See* ECF No. 66.  Since then, not a single Class Member objected to or requested exclusion from the Settlement, even though all Class Members received the Settlement Notice.  *See* Pechman Decl. ¶¶ 53–54.  For the reasons set forth in further detail below, as well as those explained in the accompanying Pechman Declaration, the Court should approve the Settlement as a fair, reasonable, and adequate resolution of a bona fide dispute that was reached following extensive arm's length negotiations between experienced attorneys with the assistance of a seasoned wage-and-hour mediator.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The Class Representatives respectfully refer the Court to their Unopposed Motion for Preliminary Approval and supporting documents, ECF Nos. 58–60, for a complete recitation of the factual and procedural history of the Litigation.  For the Court's convenience, a summary of the facts, settlement structure, and procedural history relevant to this Final Approval Motion is set forth below.

## I.    Factual and Procedural History and Settlement Discussions

On October 9, 2017, Porter filed a Complaint against Defendant seeking to recover alleged unpaid overtime wages on behalf of herself and all Class Members as putative

---

[1]    Unless otherwise defined, all capitalized terms and abbreviations used in this Memorandum of Law are defined in both the Parties' Joint Stipulation of Settlement and Release (the "Stipulation"), attached to the accompanying Declaration of Louis Pechman ("Pechman Decl.") as Exhibit 1, and the Pechman Declaration.  Exhibits to the Stipulation are referenced here by the prefix "Ex." and their designated letter. Exhibits to the Pechman Declaration are referenced by the prefix "Ex." and their designated number.

collective and class actions under the FLSA, the NJWHL, and the NJWPL.  Pechman Decl. ¶ 5.  The Complaint alleges Merrill Lynch, as a large broker-dealer, is required by applicable regulations to review correspondences of some of its employees.  *Id.* ¶ 6. Porter alleges that she and the other Class Members reviewed these communications.  *Id.*

According to Porter, Defendant had previously classified Class Members as non-exempt and paid them overtime wages. *Id.* ¶ 7.  Porter claims Merrill Lynch subsequently reclassified Class Members as exempt and paid them on a salary basis even though they purportedly did not exercise independent judgment or discretion at work in performing their duties.  *Id.* ¶¶ 7–8.  Porter claims Class Members relied on guidelines set forth in Merrill Lynch's "Operations Manual" and similar internal documents to perform their email review tasks.  *Id.* ¶ 8.  In particular, Porter alleges Class Members worked on the Autonomy Supervisor database ("Autonomy") to review emails, largely to ensure the database flagged emails correctly and to forward emails to higher-level employees for further review.  *Id.*  Porter claims activity and log-in/log-out reports from Autonomy could be used to determine the number of hours that Class Members worked per workweek.  *See id.* ¶¶ 8–9, 21.

Porter filed an FLSA consent to sue form with her Complaint.  *Id.* ¶ 10.  Opt-In Plaintiff Christine Rojas filed her FLSA consent to sue form on October 25, 2017.  *Id.*  On November 15, 2017, Defendant filed its Answer denying all allegations of wrongdoing in the Complaint and denying the Litigation could proceed as a class or collective action. *Id.* ¶ 11.  Throughout the majority of 2018, the Parties engaged in document discovery and brought numerous discovery disputes to the Court's attention.  *Id.* ¶¶ 12–16.  On April 25, 2018, Plaintiff filed a motion for conditional certification of an FLSA collective action, which was ultimately granted on November 11, 2018.  *Id.* ¶ 15.

To avoid prolonged and expensive litigation, the Parties agreed in late March 2019 to postpone litigation deadlines and to pursue mediation on a class-wide basis before Dina Jansenson, Esq., an experience wage-and-hour mediator at JAMS. *Id.* ¶ 19. Between March and July 2019, the Parties exchanged over ten thousand documents, including Autonomy data for all Class Members, participated in several conference calls, and drafted and exchanged mediation statements. *Id.* ¶¶ 14, 20–21. In July 2019, Class Counsel calculated alleged damages on a class-wide basis relying in part on Autonomy data produced and on two key assumptions: (a) breaks in activity of less than 3.5 hours reflected in the Autonomy records constitute compensable time; and (b) Class Members worked 135% of the time reflected per workday in the Autonomy Records. *Id.* ¶ 22. Defendant strongly denies and disputes these assumptions. *Id.* Based on these disputed assumptions, Class Counsel calculated the Class's highest potential damages, inclusive of FLSA liquidated damages, to be approximately $1,052,000.00. *Id.* ¶ 23.

On July 24, 2019, the Parties attended a ten-hour-long mediation session with Dina Jansenson at JAMS. *Id.* ¶ 25. At the end of the mediation, the Parties had agreed in principle on the Maximum Settlement Amount of $550,000.00 but could not agree on all terms needed to finalize a term sheet. *Id.* It was not until August 16, 2019, following additional negotiations, that the Parties agreed to all remaining terms and signed a term sheet. *Id.* They finalized the Stipulation in early November 2019. *See id.* ¶ 26; Ex. 1 at 25.

## II.    Events Since Preliminary Approval

The Settlement fully resolves the Class Members' wage-and-hour claims against Defendant under the FLSA and New Jersey state laws. *See generally* Ex. 1; Pechman Decl. ¶ 28. Defendant will pay $550,000 to end the Litigation and receive different releases from Claimants, Qualified Class Members, and the Class Representatives. Pechman Decl. ¶ 28. Except for Defendant's payment of its own employer payroll taxes, for which

3

Defendant is solely responsible and shall pay separately, all expenses envisioned under the Settlement are covered by the Maximum Settlement Amount. *Id.*

As noted, the Court issued the Preliminary Approval Order on February 14, 2020. *Id.* ¶ 33. The Preliminary Approval Order certified, for settlement purposes only, the proposed Rule 23 Class and 29 U.S.C. § 216(b) Collective Action (ECF No. 66 §§ 6–9, 12–13), approved the Settlement Notice as to form and content (*id.* §§ 13–14), appointed Porter's attorneys as Class Counsel (*id.* § 10), and approved Rust Consulting, Inc. as Claims Administrator (*id.* § 11). *See* Pechman Decl. ¶¶ 33–34. The Preliminary Approval Order ordered Rust to disseminate the Settlement Notices to Class Members. *Id.* ¶ 34.

On February 24, 2020, Class Counsel provided Rust with copies of the Stipulation, including the Settlement Notice. *Id.* ¶ 36. Soon afterwards, on March 4, 2020, Defendant provided Rust with the required Notice List containing, *inter alia*, all fifty Class Members' mailing addresses and number of workweeks worked. *Id.* ¶ 37. Before mailing out the Settlement Notices, Rust reviewed all Class Members' mailing addresses using the National Change of Address Database, to ensure they were up to date, and obtained a mailing address for the receipt of potential objections, requests for exclusion, and other communications with Class Members. *Id.* ¶¶ 38–39.

Before mailing out the Settlement Notices, Rust calculated each Class Members' estimated Individual Settlement Amount, so it could be reflected in his or her Settlement Notice. *Id.* ¶ 40; *see also, e.g.*, Ex. 3 (copy of Settlement Notice mailed to Jennifer Porter). Rust first calculated an estimated Net Settlement Fund of $319,270.67, equal to the Maximum Settlement Amount of $550,000 minus (a) $9,896 payable to Rust for its services as Claims Administrator; (b) $10,000 for estimated attorneys' costs; (c) $183,333.33 for attorneys' fees; (d) $17,500 for Service Awards; and (e) $10,000 for the Reserve Fund. *Id.* ¶¶ 41–42.

4

The Stipulation calls for each Class Member to receive one point per Applicable Workweek worked (*i.e.*, non-leave week worked) between October 9, 2015,[2] and July 24, 2019.  *Id.* ¶¶ 43–44.  The Class Members' combined points total 5,571.20.  *Id.* ¶ 45.  The estimated Net Settlement Fund of $319,270.67 divided by 5,571.20 points equals $57.3073, the Fund Point Value.  *Id.* ¶ 45.  Each Class Member's estimated Individual Settlement Payment is equal to the number of points he or she accrued in the applicable period multiplied by the Fund Point Value of $57.3073, except that no Class Member will receive less than $100 under the Settlement.  *Id* ¶ 46.  By way of example, Porter accrued 79.86 points from October 9, 2014, through July 24, 2019.  *See id.* ¶¶ 43, 47.  Her estimated Individual Settlement Amount is $4,576.56, equal to $57.3073 multiplied by 79.86 points.  *Id.* ¶ 47.

On March 13, 2020, Rust mailed out the Settlement Notices to all fifty Class Members.  *Id.* ¶ 48.  Each Settlement Notice contains the recipient's estimated Individual Settlement Amount.  *See id.* ¶ 49 (referring to Ex. 3 §§ 1–2, Settlement Notice mailed to Porter).  The Settlement Notice explains what the Litigation is about (*id.*), how Individual Settlement Amounts were calculated (*id.*), Class Members' rights to opt-out or object to the Settlement and their April 27, 2020, deadline for doing so (*id.* ¶ 50), the rights Class Members are releasing under the Settlement (*id.*), and the location, date, and time of the Fairness Hearing (*id.*).  Last, the Settlement Notice informs Class Members that they can call Class Counsel with questions and provides counsels' telephone numbers.  *Id.*  Class Counsel received two calls from Class Members on April 1 and 14, 2020, and both Class Members who called expressed their approval of the Settlement.  *Id.* ¶ 51.

---

[2]     The Class Representatives' Applicable Workweeks are calculated from three years before they filed their consents to join the FLSA collective action, October 9 and 25, 2014.  *See id.* ¶ 43.

Rust provided Class Counsel and Counsel for Defendant with weekly updates about Class Members' responses to the Settlement between March 27 and April 24, 2020. *Id.* ¶ 52.  To date, almost a month after the April 27 response deadline, there are no objections to or requests for exclusion from the Settlement.  *Id.* ¶¶ 50, 54.  No Settlement Notice was returned as undeliverable (*id.* ¶ 53), and no Class Member requested remailing of notices (*id.* ¶ 54).  All fifty Settlement Notices were delivered.  *Id.* ¶ 53.

## III.    Tasks Remaining to Complete Settlement Following Court Approval

If the Court grants this Motion, as Class Counsel believes it should, Rust will perform several additional tasks: control the Escrow Account, into which Defendant will deposit the Maximum Settlement Amount; calculate the final Individual Settlement Amounts per Class Member and mail Class Members their Settlement Checks; administer the Reserve Fund; and conduct tax reporting duties.  *Id.* ¶ 55.  With respect to tax reporting duties, all payments to Class Members under the Settlement will be made 50% as wage payments under IRS Tax Form W-2 and 50% as non-wage payments under IRS Tax Form 1099.  *Id.* ¶ 60.  For its work done to date, and for its work yet to be undertaken, Rust respectfully requests payment of $9,896.  *Id.* ¶ 56.

Defendant will deposit the Maximum Settlement Amount into the Escrow Account within fourteen (14) days of the Effective Date.  *See* Ex. 1 § 3.1(B).  The "Effective Date" is forty (40) days after the Court's issuance of an Order finally approving the Settlement, assuming there are no appeals.  *Id.* § 1.13.  Rust will distribute the Settlement Checks, pay the Class Representatives, pay itself, and pay Class Counsel within thirty (30) days of the Effective Date.  *Id.* § 3.1(D).

Because no Class Member opted out of this Settlement (*see* Pechman Decl. ¶ 57), all Class Members here are Qualified Class Members (Ex. 1 §§ 1.26, 2.5).  As such, Rust will calculate all Final Individual Settlement Amounts and mail Settlement Checks to all

6

Class Members.  Pechman Decl. ¶ 57.  Class Members will have 120 days from the date of the mailing to become "Claimants" by endorsing and depositing their Settlement Checks.  *Id.*  In exchange for receipt of their Individual Settlement Amounts, Claimants release Releasees from all wage-and-hour claims under the FLSA and New Jersey state laws.  *Id.* ¶¶ 57–58.  Class Members who do not deposit their checks within the 120-day period retain their FLSA rights but still release Releasees from all wage-and-hour claims under New Jersey state laws.  *Id.* ¶ 58.  In exchange for their Individual Settlement Amounts and their possible Service Awards, the Class Representatives generally release Releasees from all possible claims.  *Id.* ¶ 59.

Any amounts not claimed by Qualified Class Members will revert back to Defendant.  *Id.* ¶ 61.  To the extent its funds are not used, the Reserve Fund of $10,000 will be donated to a charity jointly chosen by the Parties.  Ex. 1 § 3.5.

## ARGUMENT

## I.    Final Approval of the Settlement Is Appropriate

Rule 23(e) requires class action settlements to be approved by a district court.  Fed. R. Civ. P. 23(e).  Likewise, the FLSA generally requires settlements to be approved by the district court or the Department of Labor.  *See, e.g.*, *Davis v. Essex Cnty.*, No. 14-CV-1122 (CCC-JBC), 2015 WL 7761062, at *2 (D.N.J. Dec. 1, 2015) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 200 (2d Cir. 2015).

The Court must determine that the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions" and, if so, the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.  In reviewing a proposed class action settlement, courts consider whether it is "fair, adequate, and reasonable."  *Lazy Oil, Co. v. Witco Corp.*,

95 F. Supp. 2d 290, 330 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581, 588 (3d Cir. 1999); *In re Gen. Motors Corp.*, 55 F.3d 768, 785 (3d Cir. 1995). In conducting this review, courts are mindful that settlement is the preferred method for resolving class action lawsuits. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004).

Federal courts, including those in the Third Circuit, strongly favor settlement of collective and class action lawsuits. *See, e.g.*, *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594–95 (3d Cir. 2010) (recognizing "strong presumption in favor of voluntary settlement" is "especially strong in 'class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation'"); *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (noting "strong judicial policy in favor of settlements, particularly in the class action context"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 ("There is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). Reaching a reasonable settlement prior to dispositive motions or trial enables parties in class actions to avoid significant expense and delay and to ensure recovery for the class. *Ehrheart*, 609 F.3d at 594–95 ("[T]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.").

Approval of a proposed class action settlement is subject to the discretion of the district court. *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 488 (3d Cir. 2017) ("The ultimate decision whether to approve a proposed settlement under this standard 'is left to the sound discretion of the district court.'" (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 308 (3d Cir. 1998))); *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975) ("The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court."). Nevertheless, in exercising its

8

discretion, the court should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

Here, the Court has already certified the Rule 23 New Jersey Class and FLSA Collective Action for settlement purposes only. *See* ECF No. 66. The Court is now asked to take the second step in the class action settlement analysis at the final fairness hearing. *See Weissman v. Philip C. Gutworth, P.A.*, No. 2:14-cv-00666 (WHW)(CLW), 2015 WL 333465, at *2 (D.N.J. Jan. 23, 2015). For the reasons set forth below, the Court should adopt the proposed Final Approval Order (enclosed to the Notice of this Motion) in its entirety, thereby finding that the Stipulation is a fair, reasonable, and adequate resolution of disputed claims; granting Class Counsel its attorneys' fees and costs requested; granting the Class Representatives' Service Awards requested; and granting Rust the Settlement Administration Expenses requested.

## II.    The Proposed Settlement Is Fair, Adequate, and Reasonable

### A.    The Court Should Presume that the Settlement Is Fair

A class action settlement is presumptively fair if: "(1) the negotiations occurred at [arm's] length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *Dominguez v. Galaxy Recycling Inc.*, No. 12–7521 (LDW), 2017 WL 2495406, at *2 (D.N.J. June 9, 2017) (quoting *In re Cedant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)); *see also In re Warfarin*, 391 F.3d at 535; *In re Gen. Motors*, 55 F.3d at 785; *Smith v. Prof'l Billing & Mgmt. Servs., Inc.*, No. 06-4453 (JEI), 2007 WL 4191749, at *1 (D.N.J. Nov. 21, 2007). Here, these factors compel a presumption of fairness.

First, the Settlement is the product of arm's length negotiations. Class Counsel calculated what they contend are Defendant's highest potential exposure after analyzing tens of thousands of records. Pechman Decl. ¶ 23. The Parties disputed, and continue to

dispute, the assumptions underlying the damages calculations. *Id.* ¶ 22–24. After a full day of extensive negotiations before a neutral mediator, followed by weeks of continued negotiations, the Parties reached a settlement in principle. *Id.* ¶¶ 25–26.

Second, the Parties completed all necessary document discovery before the mediation. *See id.* ¶¶ 12–21. Defendant produced tens of thousands of records reflecting, for example, all necessary Autonomy data (*id.* ¶¶ 14, 21), building swipe and badge records (*id.* ¶ 14), several sets of discovery responses and objections (*id.* ¶¶ 13, 16), a Class List (*id.* ¶ 20), and handbooks and internal policies (*id.* ¶ 14). Notably, for months before the mediation, the Parties litigated many discovery disputes, requiring the Court to hold two conferences. *Id.* ¶ 16.

Third, the Parties' attorneys are competent and experienced in wage-and-hour collective and class actions. Class Counsel, Pechman Law Group PLLC, is a well-respected New York City labor and employment law firm that has litigated hundreds of wage-and-hour cases on behalf of both employees and management. *Id.* ¶¶ 69–75. The Law Offices of Mitchell Schley is a labor and employment law firm experienced in wage-and-hour practice. *Id.* ¶¶ 66–68. Defendant is represented by Morgan, Lewis & Bockius LLP, an AmLaw 100 firm with one of the most highly respected management-side practices in the country. The Parties' attorneys have the experience necessary to conduct a fair and adequate assessment of the strengths and weaknesses of their clients' respective claims and defenses in the Litigation and, based on that assessment, to recommend a reasonable settlement. Because of this and Class Counsel's close involvement in the prosecution of the Litigation, Class Counsel's recommendation of settlement approval is entitled to significant weight. *See, e.g., Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995) ("In determining the fairness of a proposed settlement, the court should attribute significant weight to the belief of experienced counsel that settlement is in the

best interest of the class."); *Bullock v. Adm'r of Estate of Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979) (citing *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481–82 (E.D. Pa. 1975) (counsel is "intimately associated with the litigation and consequently far more able to weigh its relative strengths and weaknesses")).

Last, there were zero objections to or requests for exclusion from the Settlement. Pechman Decl. ¶ 54. This is particularly notable, because every Settlement Notice was delivered to the Class Members. *See id.* ¶¶ 53–54; *see also, e.g., See Dominguez*, 2017 WL 2495406, at *2 (approving settlement where 135 of 614 individuals could not be located).

## B.    The *Girsh* Factors Tip in Favor of Final Approval

At the final approval stage, courts in the Third Circuit also consider the following factors set forth in *Girsh v. Jepson*:

1) the complexity, expense, and likely duration of the litigation;
2) the reaction of the class to the proposed settlement;
3) the stage of the proceedings, and amount of discovery completed;
4) risks of establishing liability;
5) risks of establishing damages;
6) risks of maintaining a class through trial;
7) the ability of defendant to withstand a greater judgment;
8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d at 156–57. The *Girsh* factors support approval of the Settlement.

## 1.    Complexity, Expense, and Duration of Litigation

The issues in the Litigation are complex, and whether Defendant misclassified any Class Members rests upon heavily contested facts contained and reflected in tens of thousands of pages of documents. Defendant denies any Class Member was misclassified and, in opposition to Plaintiff's motion for conditional certification, produced several affidavits contradicting Porter's characterization of the work duties Class Members performed. *See* ECF No. 21. Defendant further asserts it acted at all times

11

in good faith.  Porter disputes Defendant's affidavits and assertions, claiming Class Members' duties were different than those Defendant represented.  *See* ECF No. 29. Defendant further asserts that the overtime claims of Class Members are not suitable for class or collective action treatment.  Upon the record presented, this Court noted that "Plaintiff will face a significant hurdle to show that all Email Reviewers . . . were, in fact, similarly situated."  *Id.* at 8.

There are also complex issues concerning the calculation of damages.  Even if Plaintiff could show that Class Members primarily performed non-exempt duties, which Defendant disputes, Defendant rejects Class Counsel's damages calculations.  Pechman Decl. ¶ 22.  Defendant maintains that, to the extent that certain Autonomy data produced allegedly reflects Class Members' compensable time worked, and even assuming *arguendo* the Class Members were non-exempt employees, their alleged damages would be non-existent or *de minimis*.

Continuing the Litigation will require the Parties to undergo extensive and prolonged discovery, including dozens of depositions of managers and potential Class Members, dispositive motion practice, and potentially a trial.  By reaching a mutually acceptable settlement prior to class and collective action certification briefing, depositions, dispositive motions, possibly a trial, and possibly appeals, the Parties have reduced their risks and avoided significant expense and delay.  *See Ripley v. Sunoco, Inc.,* 287 F.R.D. 300, 311 (E.D. Pa. 2012) (finding first *Girsh* factor in favor of settlement approval where approval was sought before dispositive motion practice).

The first *Girsh* factor therefore weighs in favor of preliminary approval.

### 2.    Reaction of the Class to the Settlement

The Class Members' reaction to the settlement also favors final approval.  The Class Members plainly support the Settlement.  Not one of them objected to or sought

exclusion from it.  *See* Pechman Decl. ¶¶ 53–54; *see also, e.g., In re Cedant Corp.*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of Settlement."); *In re Gen. Motors Corp.*, 55 F.3d at 812 ("Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir. 1993)); *Hegab v. Family Dollar Stores, Inc.*, No. 11–1206(CCC), 2015 WL 1021130, at *6 (D.N.J. Mar. 9, 2015) ("The paucity of negative feedback in the face of an extensive notice plan leads the Court to conclude that the settlement class generally and overwhelmingly approves the settlement.").  Indeed, the two Class Members who spoke with Class Counsel approved of it.  Pechman Decl. ¶ 51.

Accordingly, the second *Girsh* factor weighs in favor of final approval.

### 3.    Stage of Proceedings and Amount of Discovery Completed

The parties must have an "adequate appreciation of the merits of the case before negotiating."  *In re Cedant Corp.*, 264 F.3d at 235.  Here, as noted, the Parties exchanged and analyzed tens of thousands of pages of data, Defendant's policies and handbooks, affidavits, Plaintiff's emails, and Autonomy logs.  Pechman Decl. ¶¶ 13–14, 16, 21.  This information is necessary to evaluate liability and damages and to determine whether class certification may be possible.  In light of the discovery exchanged, the Parties were able to negotiate at arm's length with "a clear view of the strengths and weaknesses of their case."  *See Bonett v. Educ. Debt Servs., Inc.*, No. 01-6528, 2003 WL 21658267, at *6 (E.D. Pa. May 9, 2003).  As such, the third *Girsh* factor weighs in favor of final approval.

13

4.    **Risks of Establishing Liability and Damages and  of Maintaining a Class Action Through Trial**

Because continuing the Litigation would expose the Parties to significant litigation risks, the fourth, fifth, and sixth *Girsh* factors also all weigh heavily in favor of final settlement approval.  *See, e.g.*, *Singleton v. First Student Mgmt. LLC*, No. 13 Civ. 1744, 2014 WL 3865853, at *6 (D.N.J. Aug. 6, 2014) (listing risks of proceeding with class action involving wage-and-hour claims).  Although the Parties believe they have strong claims or defenses, they recognize they also face significant litigation costs and delays should the Litigation continue.

This case rests predominantly on determining the primary work duties Class Members performed.  Porter claims they did not exercise independent judgment or discretion.  *See* ECF Nos. 16, 22.  Defendant contends no common basis exists on which to determine the job duties each Class Member performed on a day-to-day basis, and produced testimony from several Class Members that their job duties required them to exercise independent judgment and discretion.  *See* ECF No. 21.  Furthermore, Defendant argues that to the extent there are any damages in this matter, which it denies, they would be *de minimis*.  As noted, Defendant takes significant issue with Plaintiff's damages calculations and underlying assumptions and asserts that potential damages in this Litigation would be a fraction of Plaintiff's calculations.  Pechman Decl. ¶¶ 22–24.

Although a collective action was conditionally certified in this Litigation, the Parties strongly dispute whether certification of either class should be maintained.  In this regard, the Court warned in its opinion granting conditional certification that "Plaintiff will face a significant hurdle to show that all Email Reviewers at Merrill's [ECRT] were, in fact, similarly situated."  ECF No. 34 at 8.  If the Litigation proceeds, there is no guarantee the classes can be maintained through trial, especially because Defendant will

14

present evidence from additional employees claiming to have performed different duties. *See, e.g.*, ECF No. 21. The fourth, fifth, and sixth *Girsh* factors therefore weigh heavily in favor of final settlement approval. Given the numerous disputes, which go both to the merits of the Litigation and to the calculation of potential damages, the Court should allow the Parties to "yield[] the[ir] highest hopes in exchange for certainty and resolution." *In re Gen. Motors Corp.*, 55 F.3d at 806.

### 5.   Reasonableness of Recovery in Settlement

The reasonableness of the settlement fund in light of the highest potential recovery and the litigation risks discussed above (the eighth and ninth *Girsh* factors) weigh strongly in favor of final approval, even though Defendant could probably withstand a higher judgment (the seventh *Girsh* factor).

Relying on Autonomy data and damages-related assumptions that Defendant disputes, Class Counsel calculated the highest possible damages for the class to be approximately $1,052,000.00 *inclusive* of liquidated damages under the FLSA. Pechman Decl. ¶¶ 22–23. That is, Class Counsel calculated the highest possible unpaid overtime wages for the Class to be approximately $533,000.00. *See id.* The Maximum Settlement Fund exceeds this amount by approximately $20,000.00. As such, it represents a fair and appropriate amount equal to over 100% of Defendant's highest alleged exposure, exclusive of liquidated damages.

The Maximum Settlement Amount is a fair value in light of the attendant risks of litigation, even though a greater recovery may be possible if Porter were 100% successful in every phase of the Litigation, including possible appeals. If Defendant prevailed in its defenses, such as the exemption defenses, the Class would recover nothing. If Defendant prevailed in decertifying the class, Porter would have to litigate her claims alone, in which case any potential recovery would be *de minimis* compared to the Maximum

Settlement Amount.  Furthermore, even if Plaintiff could prove Class Members were non-exempt employees and could proceed with her claims on a class and collective action basis, Defendant could still convince a jury that total damages are a small fraction of the Maximum Settlement Amount.

It is well established that a settlement in a class action can be appropriate even where the settlement amount is only a percentage of the Class's highest potential recovery.  *See Lenahan v. Sears, Roebuck & Co.*, No. 02-CIV-0045, 2006 WL 2085282, at *16 (D.N.J. 2006) (approving $15 million settlement, though maximum exposure at trial could have been as high as $104 million, because of the "magnitude of the risks in litigation"). In examining the reasonableness of a settlement, courts do not speculate about the Class's highest possible recovery.  Rather, courts consider the risk of little or no recovery at all. *See Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 240 (D.N.J. 2005) ("This Settlement yields substantial and immediate benefits, and it is reasonable in light of the best possible recovery and the attendant risks of litigation—little or no recovery at all.").  In view of the risks and disputes discussed above, the eighth and ninth *Girsh* factors weigh in favor of final approval.

### C.    The Proposed Settlement Is Fair and Reasonable under the FLSA

Whether to approve the settlement of an FLSA collective action is within this Court's discretion.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1354 ("[W]e allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.").  In its analysis, the Court should be "mindful of the strong presumption in favor of settlement."  *Morales v. PepsiCo, Inc.*, Civ. No. 11-6275, 2012 WL 870752, at *1 (D.N.J. Mar. 14, 2012) (citing *Farris v. J.C. Penney, Inc.*, 176 F.3d 706, 711 (3d Cir. 1999)).

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute."

*Bredbenner v. Liberty Travel, Inc.*, No. 09–905, 2011 WL 1344745, at *18 (D.N.J. April 8 ,2011) (citing *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). The adversarial nature of a litigated FLSA case is typically an adequate guarantor of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. A proposed settlement should be approved if it "represents a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Bredbenner*, 2011 WL 1344745, at *18 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354).

The Parties dispute whether: (1) Defendant violated the FLSA by allegedly misclassifying Class Members and failing to pay them overtime wages; (2) Defendant willfully violated the FLSA; (3) Class Members actually performed the same tasks and are similarly situated; and (4) Porter can maintain a collective action on behalf of all allegedly similarly situated Class Members. For example, Defendant claims some Class Members performed managerial duties. *See, e.g.*, ECF No. 21. Assuming liability were established, as noted, the Parties further dispute the extent of damages owed to the putative Class Members. Thus, the proposed Settlement resolves bona fide disputes. *Bredbenner*, 2011 WL 1344745, at *18 (approving settlement where "'disagreements over hours or compensation due' clearly established a bona fide dispute" and the "institution of a federal court litigation" coupled with "aggressive prosecution and strenuous defense demonstrate[d] the palpable bona fides of this dispute").

The Maximum Settlement Amount is a fair value in light of the risks of litigation discussed above, even though recovery could be greater if the collective action could be maintained and were 100% successful through trial and survived appeals.

Finally, public policy strongly favors settlements, because "they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. E. Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). The

Settlement here is consistent with this policy, because it resolves a pending action on behalf of a class of fifty employees, none of whom had any issues with the Settlement, and avoids a potential jury trial and appeals.  Because the Settlement represents a fair resolution of bona fide disputes, public policy weighs heavily in favor of its approval. *Id.*; *see also Farris*, 176 F.3d at 711.

## III.    The Court Should Approve Class Counsel's Requested Attorneys' Fees

Class Counsel requests fees equal to 33.33% of the Maximum Settlement Amount, or $183,333.33, pursuant to Rule 23(h).  *See* Pechman Decl. ¶¶ 63, 76; Ex. 1 § 3.2(A).  Class Counsel requests these fees based on the substantial amount of work performed and the significant risk that it undertook in prosecuting the Litigation purely on a contingency fee basis.  If the Litigation resulted in no recovery, Class Counsel would have recovered no fees and lost its costs incurred in the prosecution of the Litigation.  *See* Pechman Decl. ¶ 63 (explaining Class Counsel represented Plaintiff purely on a contingency fee basis of "33.33% of whatever amount was recovered").  To date, Class Counsel has dedicated 396.40 hours of attorney time prosecuting this matter.  *See id.* ¶ 81, Exs. 4–5.

Third Circuit courts prefer the percentage of the fund method for calculating attorneys' fees and costs in common fund cases.  *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *19 (stating "percentage-of-recovery method to award attorneys' fees in common fund cases" is the "prevailing methodology used by courts in this Circuit for wage-and-hour cases"); *Brown v. Progressions Behavioral Health Servs., Inc.*, No. 16–cv–6054, 2017 WL 2986300, at *5 (E.D. Pa. July 13, 2017) (same, and reasoning it "is also more appropriate to use the percentage-of-recovery method where, as here, the settlement releases Defendant from both damages and attorneys' fees").  Courts in the Third Circuit examine the following factors when analyzing the reasonableness of proposed class counsel fees as a percentage of the fund:

18

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000). "Each case is different, however, and in some circumstances one single factor may outweigh the rest." *Bredbenner,* 2011 WL 1344745, at *19. In addition to these factors, courts should "cross-check" fee calculations against the lodestar award method. *Gunter,* 223 F.3d at 195. All of these factors favor approval of Class Counsel's fee request.

First, the Maximum Settlement Amount of $550,000 was created for fifty Class Members, of whom 100% will be participating in the Settlement. Pechman Decl. ¶ 54. The Class's highest possible damages calculated, based on heavily disputed assumptions, is $1,052,000. *Id.* ¶ 23. This includes FLSA liquidated damages, which Defendant also disputes. *Id.* The Class Members' total alleged unpaid overtime *wages* are $526,000. *See id.* The Maximum Settlement Amount exceeds 100% of the Class's total alleged unpaid overtime wages. *See id.*

The Settlement represents a significant recovery in light of the highly disputed assumptions on which Class Counsel's calculations rest and the litigation risks discussed above. *Id.* ¶ 22; *Chemi v. Champion Mortg.*, No. 2:05–cv–1238(WHW), 2009 WL 1470429, at *11 (D.N.J. May 26, 2009) ("It is also significant that counsel has secured this settlement in the face of considerable litigation challenges surrounding certification of the class and estimation of unpaid overtime hours."). The recovery here exceeds those in other misclassification cases. *See, e.g., Hegab*, 2015 WL 1021130, at *12 (collecting cases finding

19

per-person amount, calculated as net settlement amount divided by class members, to range between $1,561 to $3,264). The estimated Net Settlement Fund of $319,270.67 divided by the fifty Class Members results in a per-person amount of over $6,300. *See* Pechman Decl. ¶ 42. On average, Class Members here will receive $6,385.41, with a highest Individual Settlement Amount of $$11,338.83 and a lowest of $179.75. *Id.* ¶ 47.

Second, as noted, all Class Members received the Settlement Notice, and none objected to the Settlement. Pechman Decl. ¶ 54. The Settlement Notice sets forth the amounts that Class Counsel would seek in fees and costs. *See* Ex. 3 § 1 ("The settlement fund will cover . . . attorneys fees' [*sic*] up to one-third of the settlement fund plus costs."). "The absence of objections by settlement class members to the fees requested by class counsel strongly supports approval." *Hegab*, 2015 WL 1021130, at *12; *see also Dominguez*, 2017 WL 2495406, at *7 ("No class member has asserted any objection to the proposed fee award, and the Court consequently finds that this factor weighs in favor of approval.").

Third, Class Members are represented by experienced wage-and-hour counsel who have invested significant time and resources into the litigation and resolution of the Litigation. Pechman Decl. ¶¶ 66–75. Class Counsel has successfully represented other classes in numerous wage-and-hour disputes. *Id.* ¶¶ 66, 68, 72, 75. Class Counsel's skill and efficiency is evidenced from the fair and reasonable Settlement achieved early in the Litigation despite the significant defenses that Defendant asserted, as discussed above, through Morgan Lewis & Bockius LLP, one of the most renowned management-side law firms in the country. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *20 ("The skill and efficiency of class counsel is 'measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'") (citation omitted).

20

Fourth, the Litigation has been ongoing for almost 2.5 years. *See* ECF No. 1. As discussed, *supra* Section II.B, the Litigation centers on heavily disputed and complex legal and factual issues, including whether Class Members primarily performed non-exempt duties, whether Defendant willfully violated the FLSA, whether Class Counsel's damages calculations are accurate, and whether Plaintiff can maintain the Litigation on a class and collective action basis. To resolve these disputes efficiently, experienced counsel exchanged and analyzed all damages-related information and other documents, including Autonomy records, enabling them to focus on settlement negotiations and the eventual resolution of this matter with the help of an experienced mediator. Pechman Decl. ¶¶ 12–14, 16, 18, 21.

The fifth and sixth *Gunter* factors also support approval of Class Counsel's fees requested. Class Counsel undertook this representation purely on a contingency fee basis without a retainer. Pechman Decl. ¶ 63. As noted, *supra* Section II.B, there is a genuine risk of non-payment "due to the difficulty in establishing liability at trial." *Bredbenner*, 2011 WL 1344745, at *20. Defendant presents strong defenses, notably that Class Members primarily performed exempt duties, that, "if successful, could relieve the company from any liability. In short, class counsel undertook substantial risk that the litigation would yield little or no recovery and leave them completely uncompensated for their time." *Id.* To date, Class Counsel, has worked over 390 hours and incurred costs of $5,137.26 while prosecuting the Litigation. *See* Pechman Decl. ¶¶ 81, 84.

The 33.33% award requested is consistent with awards that courts in the Third Circuit routinely approve. *See, e.g.*, *Bredbenner*, 2011 WL 1344745, at *18 (awarding 32.6% of settlement fund, totaling $978,353.16, plus costs of $11,646.84, in wage-and-hour class action); *In re Gen. Motors Corp.*, 55 F.3d at 822; *Brown*, 2017 WL 2986300, at *6 ("[T]he Honorable Jose Linares has stated that '[t]he Third Circuit has noted that fee awards

generally range from 19% to 45% of the settlement fund' in common fund cases and then cited several cases in which awards in the range of one-third were awarded." (quoting *Brumley v. Carmin Cargo Control, Inc.*, Nos. 08–1798, 09–6128, 10–2461, 2012 WL 1019337, at *12 (D.N.J. Mar. 26, 2012) ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in other, similar cases.") (collecting cases))); *Cruz v. JMC Holdings, Ltd.*, No. 16–9321, 2019 WL 4745284, at *9 (D.N.J. Sept. 30, 2019) (approving request of 43% of fund as attorneys' fees as "within the range of reasonable allocations with respect to awards granted in similar cases"). District courts reduce fee percentages primarily in cases involving very large settlement funds significantly exceeding the settlement fund in this case. *See, e.g.*, *In re Cedant Corp. Litig.*, 264 F.3d at 241–42; *Dominguez*, 2017 WL 2495406, at *8 n.5 ("[F]ee awards in cases with very large recoveries, *e.g.*, over $100 million, have been of lower percentages."); *C.f. In re Safety Components, Inc. Secs. Litig.*, 166 F. Supp. 2d 72, 101–02 (D.N.J. 2001) (listing various cases in which courts awarded 33.3% of large settlement funds). Here, the settlement amount is $550,000.00 and the one-third percentage requested is reasonable.

Last, a lodestar cross-check confirms that the fee requested is reasonable. To cross-check the lodestar, the court may calculate the "lodestar multiplier," which equals the fee requested as a percentage of the fund divided by the lodestar. *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006); *Bredbenner*, 2011 WL 1344745, at *21. Lodestar multipliers "ranging from one to four are frequently awarded in common fund cases." *In re Prudential*, 148 F.3d at 341; *Dominguez*, 2017 WL 2495406, at *8 ("Percentage of recovery fees have been approved when they represent up to four times what the lodestar recovery might represent."). This is because lodestar multipliers account for "the contingent nature or risk involved in a particular case and the quality of the attorneys'

work." *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 306 (3d. Cir. 2005).  Because the "lodestar cross-check does *not* trump the primary reliance on the percentage of the fund method," the lodestar cross-check calculation need entail neither mathematical precision nor bean-counting.  The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306–07.

Here, Class Counsel's lodestar is $170,600, equal to each professional's hourly billable rate multiplied by his total hours worked in the Litigation.  Pechman Decl. ¶ 81; *see also* Exs. 4–5.  The lodestar multiplier is 1.0746 (*i.e.*, $183,333.33 fee requested divided by the $170,600 lodestar).  Accordingly, the lodestar cross-check further supports approval of Class Counsel's fees requested, because the multiplier falls in the low end of the acceptable 1 to 4 range.  *Hegab*, 2015 WL 1021130, at *15

## IV.    The Court Should Approve Class Counsel's Costs Requested

The Court should approve Class Counsel's request for reimbursement of $5,137.26 in costs incurred in the prosecution of this Action.  Pechman Dec. ¶ 84.  "Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Safety Components Int'l, Inc. Secs. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (citing *Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d Cir. 1995)).

Class Counsel incurred $5,137.26 in costs, equal to $400.00 for the filing of the Complaint, $59.99 for service of process, $52.49 and $19.58 for copying expenses at FedEx, $305.20 for a court transcript from the Court's Order dated June 4, 2018, and $4,300 in JAMS mediation expenses.  Pechman Decl. ¶ 84.  These expenses incurred are documented and explained in the Pechman Declaration. *Id.*; *see also* Ex. 6.

**V.    The Court Should Approve the Service Awards Requested**

The Class Representatives' service awards are reasonable and should be approved. Service or incentive awards "are fairly common in class action lawsuits involving a common fund for distribution to the class." *Bredbenner*, 2011 WL 1344745, at *22. The purpose of incentive awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of the class action litigation,' and to 'reward the public service' for contributing to the enforcement of mandatory laws." *Id.* (internal citations omitted).

The combined service awards requested here, $17,500.00, represent a tiny fraction (3.18%) of the Maximum Settlement Amount, and individually (*i.e.*, $2,500 for Rojas and $15,000 for Porter) fall well within the range of service awards regularly approved in class actions by courts in the Third Circuit. *See, e.g.*, *id.* at *23 (collecting cases in which class representatives were awarded between $3,000.00, on the low end, to $30,000.00, on the high end, as service awards). Notably, no Class Member objected to the Service Awards even though they were set forth in the Settlement Notice. *See* Ex. 3 § 1 (explaining the settlement fund will be used in part to pay for "service awards totaling $17,500 to Plaintiff and another opt-in Plaintiff, known as the Class Representatives, for their services rendered in obtaining this settlement").

Porter, the sole named Plaintiff, was directly involved in the Litigation since before its filing by providing all facts necessary for the drafting and revision of the Complaint, such as the work duties she and other Class Members performed and Defendant's alleged misclassification practices. Pechman Decl. ¶ 87. After the Complaint was filed, she took the burden associated with being the only named Plaintiff by, for example, replying to document requests and interrogatories with counsel. *Id.* Porter and Rojas reviewed thousands of pages of documents in anticipation of the mediation and in the midst of

24

discovery disputes. *Id.* They both attended the mediation on July 24, 2019, assisting in settlement negotiations by providing information to the mediator, Ms. Jansenson, and answering her questions. *Id.*

The Class Representatives performed sufficient work that was instrumental in obtaining the proposed Settlement and should receive the service awards requested. *See, e.g.*, *Brown*, 2017 WL 2986300, at *7 (approving $10,000.00 service award to each plaintiff involved in commencing action and "willing to assume the risk associated with being a named plaintiff in a class action").

## VI.   The Court Should Grant Rust the Settlement Administration Expenses Requested

Finally, Rust, as Claims Administrator, should be awarded its requested Settlement Administration Expenses of $9,896, equal to 1.78% of the Maximum Settlement Amount. *See* Pechman Decl. ¶¶ 25, 42. As noted, Rust performed, and will perform, several important duties set forth in the Stipulation. *See id.* ¶¶ 36–48, 52, 55, 56; *see also* Ex. 2. As an experienced settlement administrator (*see, e.g.*, Ex. 2 ¶ 2), the amount Rust requests in Settlement Administration Expenses is well within the range of reason and should be approved.

CONCLUSION

For all of the foregoing reasons, the Class Representatives respectfully request that the Court grant this Motion in its entirety by adopting and entering the Proposed Final Approval Order, attached to the Notice of Motion.

Dated:   New York, New York
June 1, 2020

PECHMAN LAW GROUP PLLC

By:    *s/ Louis Pechman*
Louis Pechman, Esq.

25

Gianfranco J. Cuadra, Esq.
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.:  (212) 583-9500
pechman@pechmanlaw.com
cuadra@pechmanlaw.com


THE LAW OFFICES OF MITCHELL SCHLEY, LLC


By:      *s/ Mitchell Schley*_____
         Mitchell Schley, Esq.
         197 Route 18, Suite 3000
         East Brunswick, NJ 08816
         Tel.:  (732) 325–0318

*Attorneys for Plaintiff Jennifer Porter, the Rule 23*
*Class, and the FLSA Collective*

26